730 F.2d 525
 Everett R. LYON, Dennis E. Fisher, Richard A. Lamphere,
Edward W. Don, Russell J. Fitz, Robert R. Padgett
and Clayton C. Manning, Appellants,
v.
Hal FARRIER, Crispus C. Nix, Paul Hedgepeth, Larry Moline,
Correctional Officers Rooney, Woodall, Pyley, Ware, Gutman,
Sliffer, Clostermery, Robinson, Leach, Ossion, McMaines,
Fisher, Blythe, and Eight Unknown Corrections Officers, all
individually and in their official capacities, Appellees.
 No. 83-2062.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1984.
Decided March 20, 1984.
 
 Thomas J. Miller, Atty. Gen. of Iowa, Gordon E. Allen, Sp. Asst. Atty. Gen., Layne M. Lindebak Asst. Atty. Gen., Des Moines, Iowa, for appellees.
 Everett R. Lyon, Dennis E. Fisher, pro se.
 Before HENLEY, Senior Circuit Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants are protective custody inmates of the Iowa State Penitentiary (ISP) who brought a civil rights action under 42 U.S.C. Sec. 1983. Appellants alleged that prison officials unconstitutionally deprived them of their personal property. The district court dismissed appellants' claims and this appeal followed. For reversal appellants argue that the district court erred (1) in finding that they were not denied equal protection with respect to female and general population inmates; (2) in holding that they were not deprived of property without due process of law; (3) in holding that appellant Fitz had not shown that destruction of a painting possessed by him was without due process; and (4) in determining that the uncorroborated testimony of appellant Padgett was insufficient to find a denial of his right of access to the courts. We affirm.
 
 
 2
 On September 2, 1981, a riot occurred at ISP. For health and security reasons, the warden issued a directive on September 28, 1981, limiting the amount and types of personal property inmates could keep in their cells. During the riot, prison officials often had a difficult time distinguishing inmates from other persons because inmates were allowed to wear a wide variety of street clothing. The warden's directive severely restricted the clothing inmates were permitted to possess and wear. In addition, fire officials had inspected the prison and determined that the large amounts of property inmates were storing in their cells created a fire hazard. The warden's property reduction order was in direct response to these problems.
 
 
 3
 To implement this new policy the warden ordered a series of shakedown searches between September 1981 and January 1982. Inmates whose property was seized could direct that it be mailed home, donated to charity, or destroyed. Appellants were in protective custody at the time of these shakedowns. Although prison officials removed numerous items of clothing, grooming implements, appliances, and hobbycraft materials from appellants' cells, these articles were forwarded to appellants' relatives, returned, or stored in the prison's property room. A painting in the cell of appellant Fitz, which belonged to a former inmate, was removed and destroyed as contraband pursuant to a prison regulation forbidding inmates to possess or store another's property. Prison officials also allegedly removed from the cell of appellant Padgett some of his legal materials pertaining to Veterans' Administration and Social Security proceedings.
 
 
 4
 Appellants contend that rules pertaining to their possession of personal property are different from the rules applicable to prisoners in the general population at ISP and to both male and female inmates at other penal institutions in Iowa, and that these differences violate equal protection guarantees. We begin our analysis by noting that "[p]rison administrators * * * should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), quoted in Hewitt v. Helms, --- U.S. ----, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983). To succeed on an equal protection claim the appellants were required to show that they received treatment which was invidiously dissimilar to that received by other inmates. Peck v. Hoff, 660 F.2d 371, 373 (8th Cir.1981); Burns v. Swenson, 430 F.2d 771, 778 (8th Cir.1970), cert. denied, 404 U.S. 1062, 92 S.Ct. 743, 30 L.Ed.2d 751 (1972). Appellants have not shown that the claimed differences in treatment were on account of sex or any other basis that might require heightened scrutiny. In view of the special status of protective custody inmates vis-a-vis other inmates incarcerated at ISP and at other institutions, and in the wake of the prison riot, prison officials were well within their authority in limiting the amounts and types of personal property possessed by appellants.
 
 
 5
 Appellants claim that the warden's property reduction order deprived them of property without due process of law. In Bell v. Wolfish, supra, 441 U.S. at 554, 99 S.Ct. at 1882, the Supreme Court stated that the "due process rights of prisoners and pretrial detainees [against the deprivation of their property without due process of law] are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." (Emphasis added.) The property reduction order in the present case was adopted both to reduce a fire hazard caused by the abundance of personal property prisoners were keeping in their cells and to make prisoners easily distinguishable from other persons in the event of a disturbance. The property reduction policy was a measured response to serious health and security problems, and "substitution of judicial judgment for that of the expert prison administrators in matters such as this is inappropriate." Id.
 
 
 6
 We find without merit the argument that destruction of a painting possessed by appellant Fitz constituted a deprivation of property without due process of law. The rules of the prison did not allow Fitz to possess the painting since it belonged to someone else. Because the property was contraband, Fitz cannot seriously argue that he had a protected property interest in it. Therefore, the destruction of the painting did not implicate any due process concerns. See Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972).
 
 
 7
 Finally, appellant Padgett testified at the evidentiary hearing that prison officials confiscated from his cell legal materials regarding Veterans' Administration and Social Security proceedings. The district court accepted the magistrate's determination that Padgett's uncorroborated testimony was insufficient to support a finding of a violation of his right of access to the courts. This factual finding is governed by the clearly erroneous standard of review on appeal. See Fed.R.Civ.P. 52(a). Appellants have presented no evidence indicating that this finding was clearly erroneous.
 
 
 8
 Accordingly, the judgment of the district court is affirmed.